## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

**QUINCY DEMERY**
                    Plaintiff,

v.

**NEXTEER AUTOMOTIVE CORP.,**
            Defendant.
_____/

**GAFKAY LAW, PLC**
**JULIE A. GAFKAY (P53680)    "DEMAND FOR JURY TRIAL"**
**Attorney for Plaintiff**
**175 S. Main Street**
**Frankenmuth, MI 48734**
**(989) 652-9240**
**jgafkay@gafkaylaw.com                       /**

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a Judge in this Court.

### PLAINTIFF'S COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, Quincy Demery, by and through his

attorney, Gafkay Law, PLC, by Julie A. Gafkay and hereby files this

action against Defendant, Nexteer Automotive Corp., as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, Quincy Demery (hereinafter "Plaintiff"), is a resident of the County of Saginaw, State of Michigan.

2.     Defendant, Nexteer Automotive Corp. (hereinafter "Defendant"), is a foreign profit corporation domiciled in the State of Delaware and operating a facility located at 3900 E. Holland Road in the City of Saginaw, County of Saginaw, State of Michigan.

3.     This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     This is a civil action for violations of Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act for race discrimination and retaliation.

5.     Plaintiff also asserts federal claims against Defendant for violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. 2601 et seq.

6.     Plaintiff also brings a state claim under the Michigan Whistleblowers' Protection Act against Defendant pursuant to MCL 15.361 et seq.

7.    The events giving rise to this cause of action occurred within the Eastern District of Michigan, Northern Division.

8.    Plaintiff is filing a charge on the basis of race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") within three (300) days of the unlawful employment alleged in this Complaint.  The charge will be filed as soon as the EEOC is open after the Government shutdown.

9.    Plaintiff further states he has timely filed this action within ninety (90) days pursuant to his Michigan Whistleblowers' Protection Act claim.

## **RELEVANT FACTS**

10.    Plaintiff became employed by Defendant as a machine operator in or about 2011.

11.    Plaintiff was qualified for his position.

12.    Plaintiff is African American.

13.    Plaintiff worked with another African American employee named Eric Eggleston.

14.    In or about of September of 2015, Mr. Eggleston was accused of theft and terminated from his employment with Defendant.

15.    Plaintiff was a witness to the alleged theft and had knowledge the

allegation against Mr. Eggleston was not true and that Mr. Eggleston the victim of race discrimination.

16.    After Mr. Eggleston was fired, an unemployment hearing was held with the State of Michigan.

17.    Plaintiff was requested to appear at the said unemployment hearing and Plaintiff testified under oath on behalf of Mr. Eggleston with Defendant on the other side.

18.    Subsequently, on or about September 16, 2016, Mr. Eggleston filed a lawsuit alleging, among other things, race discrimination.

19.    Plaintiff was listed as a witness in Mr. Eggleston's race discrimination case.

20.    Mr. Eggleston's race discrimination case continued until on or about June 21, 2018 when it was dismissed.

21.    Defendant knew Plaintiff had testified on behalf of Mr. Eggleston and that Plaintiff was listed as a witness in Mr. Eggleston's lawsuit for race discrimination.

22.    After Plaintiff testified on behalf of Mr. Eggleston and was listed as a witness, he began to be watched more closely by supervision and written and disciplined for frivolous or untrue allegations.

23.     One of Plaintiff's supervisors was Tony Mack (hereinafter "Mack") who is Caucasian.

24.     On or about November 30, 2018, Mack gave Plaintiff a disciplinary action for not using his hearing protection, i.e. earplugs.

25.     There were similarly situated White employees who were within Mack's sight on several occasions without the required hearing protection and Mack failed to discipline those employees.

26.     Plaintiff believed he was the victim of race discrimination based on Mack's treatment.

27.     Plaintiff complained about Mack's discriminatory treatment toward him.

28.     On or about November 30, 2018 - December 1, 2018, Plaintiff was hospitalized due to severe heart palpitations.

29.     Plaintiff advised Defendant he had been hospitalized on December 1, 2018.

30.     Plaintiff was scheduled to work on or about Saturday, December 1, 2018, however, could not due to the said hospitalization.

31.     Defendant interfered with Plaintiff's FMLA rights by denying him protected time off under the FMLA for the hospitalization on December

1, 2018.

32.    Indeed, Plaintiff received a three-day suspension due to not working on Saturday, December 1, 2018, when he was hospitalized.

33.    On about December 10, 2018, when Plaintiff was going on a break, he was stopped by Mack and told to wipe down the top of his machine in his cell area.

34.    Plaintiff told Mack he was going on break, but would do it when he returned.

35.    Indeed, Plaintiff had cleaned his cell area already and there were engineers in the area making it impossible for him to clean his area at that point.

36.    Mack called Plaintiff a "fu- -king nobody" even though Plaintiff agreed to do as instructed by Mack.

37.    After Plaintiff went on break, he complained to Mack about his derogatory language toward him, which Mack denied.

38.    Subsequently, that same day, before Plaintiff even had a chance to return to his cell area, Plaintiff was discharged.

39.    A motivating factor for Plaintiff's discharge was his race.

40.    A motivating factor for Plaintiff's discharge was in retaliation for

his complaints of race discrimination.

41.   A motivating factor for Plaintiff's discharge was that he had been requested to participate in a hearing with the State of Michigan on behalf of another employee and he had been listed as a witness on behalf of a former employee who was suing for race discrimination.

42.   A  motivating factor for Plaintiff's discharge was in retaliation for taking off on or about December 1, 2018 due to a serious health condition which was covered or should have been covered under the FMLA.

43.   Plaintiff suffered damages as a result of the above.

## COUNT I - RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT

44.   Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 43 above.

45.   Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer…to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).

46.   That at all pertinent times, Defendant was an employer defined by

Title VII, 42 U.S.C. § 2000e(b).

47.   At all pertinent times, Plaintiff was and is a member of a protected class on the basis of race, African American.

48.   At all pertinent times, Plaintiff was qualified for the position he held.

49.   Plaintiff suffered an adverse employment action when he was terminated on or about December 10, 2018.

50.   Plaintiff suffered the adverse employment action under circumstances giving rise to an inference of race discrimination.

51.   Defendant treated similarly situated employees that were outside his protected class in a more favorable fashion and/or Defendant replaced Plaintiff with an employee that is outside his protected class.

52.   Defendant's proffered reasons for taking the adverse action were pretextual in nature.

53.   Defendant's proffered reasons are not based in fact, did not actually motivate its decision, or were insufficient to warrant the decision to discharge Plaintiff.

54.   Defendant's actions constitute race discrimination in violation of Title VII of the Civil Rights Act of 1964.

55.   As a direct and proximate result of Defendant's unlawful actions Plaintiff has suffered and will continue to suffer from economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, health, dental, and/or life insurance benefits, pension, and/or retirement benefits, disability benefits, investment opportunities, employer contributions, and other compensation and fringe benefits, provided by Defendant along with the additional amount to offset any negative tax consequences resulting from recovery.

56.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages including, but not limited to, emotional distress, mental anguish, shock, freight, humiliation, embarrassment, anxiety, nervousness, depression, and loss of the ordinary pleasures of life.

57.   Plaintiff also is entitled to punitive damages pursuant to 42 U.S.C. § 1981(a) because Defendant engaged in a discrimination against Plaintiff with malice or with reckless indifference to Plaintiff's federally protected rights.

## COUNT II – RACE DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT AGAINST DEFENDANT

58.   Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 57 above.

59.   The Michigan Elliott-Larsen Civil Rights Act makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of race. MCL § 37.2202(1)(a).

60.   Defendant was Plaintiff's employer as defined by the Act. MCL § 37.2201(a).

61.   Plaintiff is a member of a protected class based on his race, African American.

62.   Plaintiff was qualified for his position.

63.   Plaintiff suffered an adverse employment action when he was discharged.

64.   Plaintiff suffered adverse actions under circumstances giving rise to a claim for race discrimination.

65.   Defendant treated similarly situated employees that were outside his protected class in a more favorable fashion and/or Defendant replaced

Plaintiff with an employee that was outside his protected class.

66.    Defendant's proffered reasons for taking the adverse action are pretextual in nature.

67.    Defendant's proffered reasons are not based in fact, did not actually motivate its decision or were not sufficient to warrant its decision to discharge.

68.    Defendant's actions constitute race discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.

69.    As a direct and proximate result of Defendants' unlawful actions Plaintiff has suffered and will continue to suffer from economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, health, dental, and/or life insurance benefits, pension, and/or retirement benefits, disability benefits, investment opportunities, employer contributions, and other compensation and fringe benefits, provided by Defendant along with the additional amount to offset any negative tax consequences resulting from recovery.

70.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages including, but not limited to, emotional distress, mental anguish, shock,

freight, humiliation, embarrassment, anxiety, nervousness, depression, and loss of the ordinary pleasures of life.

## COUNT III – VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993-INTERFERENCE

71.   Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 70 as stated above.

72. In interfering with Plaintiff exercising his rights under the FMLA by failing to designate December 1, 2018 as protected under the FMLA and suspending Plaintiff for not reporting to work on December 1, Defendant violated Plaintiff's rights under the FMLA, 29 USC 2601 et seq.

73.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities.

## COUNT IV – VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993-RETALIATION

74.   Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 73 as stated above.

75.   Plaintiff was disciplined and suspended for not reporting to work on December 1, 2018 when he was hospitalized.

76.   Plaintiff was terminated on or about December 10, 2018.

77.   A motivating factor for his termination was retaliation by Defendant

because Plaintiff was unable to work on December 1, 2018 when he was hospitalized and said time off was or should have been covered by the FMLA.

78.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities.

## COUNT V – MICHIGAN WHISTLEBLOWERS' PROTECTION ACT CLAIM AGAINST DEFENDANT

79.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 78 above.

80. At all material times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of the Whistleblowers' Protection Act, MCL 15.361 et seq.

81. Defendant violated the Whistleblowers' Protection Act when it discriminated against Plaintiff as described regarding the terms, benefits, conditions, and privileges of his employment because he reported a violation or suspected violation of a law, regulation, or rule of the State of Michigan and opposed practices made illegal by the laws, regulations, or rules of the State of Michigan and/or testified at a hearing with the State of Michigan and was listed as a witness in a race discrimination action against Defendant.

82. The actions of Defendants were intentional.

83. As a direct and proximate result of Defendant's unlawful actions against Plaintiff as described, Plaintiff has sustained injuries and damages, including, but not limited to, loss of earnings; loss of career opportunities; mental and emotional distress; loss of reputation and esteem in the community; and loss of the ordinary pleasures of everyday life, including the opportunity to pursue gainful occupation of choice.

## COUNT VI – RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT

84. Plaintiff incorporates by reference paragraphs 1 through 83 above.

85. Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices described above, in violation of Title VII.

86. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

87. As a direct and proximate result of Defendant's unlawful actions Plaintiff has suffered and will continue to suffer from economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, health, dental, and/or life insurance benefits, pension, and/or retirement benefits, disability benefits, investment

opportunities, employer contributions, and other compensation and fringe benefits, provided by Defendant along with the additional amount to offset any negative tax consequences resulting from recovery.

88.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages including, but not limited to, emotional distress, mental anguish, shock, freight, humiliation, embarrassment, anxiety, nervousness, depression, and loss of the ordinary pleasures of life.  Plaintiff also seeks punitive damages against Defendant.

## COUNT VII – RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT AGAINST DEFENDANT

89.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 88 above.

90.    Defendant retaliated against Plaintiff for having complained about Defendant's discriminatory employment practices described above, in violation of the Michigan Elliott-Larsen Civil Rights Act.

91.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

92.    As a direct and proximate result of Defendant's unlawful actions

Plaintiff has suffered and will continue to suffer from economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, health, dental, and/or life insurance benefits, pension, and/or retirement benefits, disability benefits, investment opportunities, employer contributions, and other compensation and fringe benefits, provided by Defendant along with the additional amount to offset any negative tax consequences resulting from recovery.

93.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages including, but not limited to, emotional distress, mental anguish, shock, freight, humiliation, embarrassment, anxiety, nervousness, depression, and loss of the ordinary pleasures of life.

PLAINTIFF REQUESTS that this Honorable Court enter judgment against Defendant as follows:

1.   Legal relief

    a.   a judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled

    b.   compensatory damages in whatever amount he is found to be entitled

c.      liquidated damages pursuant to the FMLA for willful violations

d.      punitive and exemplary damages commensurate with the wrong and Defendant's ability to pay

e.      an award of interest, costs, and reasonable attorney fees

2.    Equitable relief

a.      an order reinstating Plaintiff to the position he would have held if there had been no discrimination, interference, and retaliation by Defendant

b.      an injunction prohibiting any further acts of retaliation, interference, or discrimination

c.      an award of interest, costs, and reasonable attorney fees

d.      whatever other equitable relief appears appropriate at the time of trial

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a jury trial in the above-captioned matter.

Respectfully submitted,

GAFKAY LAW, PLC

Dated: <u>1/21/2019</u>        <u>s/Julie A. Gafkay</u>
Julie A. Gafkay (P53680)
Attorney for Plaintiff
175 S. Main Street
Frankenmuth, MI 48734
(989) 652-9240
jgafkay@gafkaylaw.com